Filed 11/10/14  P. v. Carroll CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BRIAN ANTHONY CARROLL, JR.,<br><br>    Defendant and Appellant. | F066554<br><br>(Super. Ct. No. F12901672)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Denise Whitehead, Judge.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Catherin Chatman and Henry J. Valle, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury found appellant Brian Anthony Carroll, Jr., guilty of carjacking (Pen. Code, § 215, subd. (a))[1] and not guilty of robbery (§ 211).  The court found four prior prison commitments true under section 667.5.

---

[1]    All further statutory references are to the Penal Code unless otherwise stated.

Appellant was sentenced to three years in state prison for the carjacking conviction and an additional four years for the prison priors (§ 667.5, subd. (b)). The total term of imprisonment was seven years.

On appeal, appellant contends that his conviction must be reversed because the evidence is insufficient to prove carjacking and that the trial court erred in its failure to instruct, sua sponte, on the lesser included offense of unlawful taking of a vehicle (Veh. Code, § 10851, subd. (a)). We affirm.

**STATEMENT OF THE FACTS**

On February 29, 2012, Raul Hernandez traveled from his home in Firebaugh, California to Mendota, California in a blue Mustang vehicle. He cashed a paycheck and drove to a trailer park to see a friend, Rudy Perez, for auto repairs. Appellant was close friends with Perez and came by with his girlfriend, Keisha Benitez, while Perez was fixing Hernandez's car. Hernandez had never met appellant or Benitez before. They engaged in a brief conversation and Hernandez asked if Benitez "partied." This was taken to mean whether she drank alcohol or used drugs. Appellant invited Hernandez to meet up with them later that evening at Gion Porras's house, which was down a nearby alley. At some point, appellant also offered Hernandez the opportunity to have sexual relations with Benitez. When Perez finished the car repairs, Hernandez drove him to his mother's house and then returned to meet appellant and Benitez at Porras's house.

Hernandez parked the car in the alley next to the home and entered the backyard through a gate. Upon entering, he saw Benitez in the back seat of a Cadillac parked in the yard. Hernandez agreed to pay approximately $60 to have sex with Benitez and gave the money to appellant. Initially, Benitez seemed to agree with the arrangement. Appellant left them alone and Hernandez entered the back of the Cadillac with Benitez. Appellant then suddenly returned carrying a large stick and ordered Hernandez to get out of the car. Hernandez testified that appellant was striking the ground with the stick while

2.

demanding all of Hernandez's money and the keys to his car, which was still parked in the alley. He also stated that Porras was present holding a saw.

Hernandez claimed that over the course of this confrontation he was shoved against the car, punched in the face, and that his life was threatened as he handed over the money he had, little by little. Porras told Hernandez he should cooperate. Regarding the car, appellant initially ordered him to call the registered owner and tell them that the car had been sold.[2] However, when the owner could not be reached, appellant forced Hernandez to sign a note saying that he sold the car to Benitez. According to Hernandez, he was too nervous to sign and so appellant gave him methamphetamine to smoke to calm his nerves, at which point he signed the note. Hernandez testified that he then saw appellant go to the car in the alley, assumed he got in (since he saw him close the door), heard it start, and saw the car pull away. Porras then told Hernandez he could leave. Porras warned Hernandez not to contact the police or they would find him.

Upon leaving Porras's house, Hernandez went back up the alley and soon found Perez. Hernandez told Perez that he had been robbed. Perez went to the house and spoke with appellant. Perez returned with the keys and told Hernandez he could find the Mustang parked on the street in front of Porras's house. Hernandez testified that he spent the next three days living in his car before calling the police because he was afraid of being attacked.

*Defense*

According to appellant's testimony at trial, when Hernandez arrived at Porras's house he offered beers and methamphetamine to the others. Appellant, Hernandez, and Benitez were all sitting in the Cadillac together when Hernandez asked appellant to translate to Benitez his desire to have sex with her. She agreed, $60 was exchanged, and appellant left them alone and went to join Porras, who was doing some work in the

---

[2]     The car's registration listed a woman in Dos Palos as the registered owner as of February 29, 2012, even though Hernandez had partly purchased it.

3.

garage. Appellant stated that they heard a noise coming from the car and then heard Benitez saying "[g]et off me, stop." Appellant then opened the car door and pulled Hernandez out. He testified that he was upset and yelled at Hernandez and also noted that he saw Benitez's shirt was torn open and that she also appeared upset. There was a brief discussion in which appellant suggested Hernandez might have tried to rape Benitez. Appellant testified that Hernandez asked him not to tell the police and then Hernandez left. When Perez came by to retrieve Hernandez's keys, appellant handed them over and told Perez that he believed Hernandez tried to rape Benitez.

Perez testified that when he found Hernandez coming out of the alley that night and he looked nervous, he was slurring and stuttering, and looked "intoxicated." At trial, Hernandez acknowledged both drinking beer and smoking methamphetamine. During cross-examination, he also testified that he was not exactly clear as to what happened regarding whether appellant left with the car while Hernandez stayed behind. He also stated that before leaving, appellant shook his hand and told him "'[e]verything's going to be okay.'"

Defense Investigator Celia Alderete testified that she had examined the backyard and the alley, and that in her opinion it is impossible to see through the fence into the alley. She also stated that it would be impossible to see a car parked in the alley from the backyard. The note about selling the car to Benitez was never found, and no paper or pencil was found in the backyard. Appellant denied driving or moving Hernandez's car.

## DISCUSSION

### I. SUFFICIENCY OF THE EVIDENCE

Appellant argues that there is insufficient evidence to support his conviction of carjacking. We disagree.

*Standard of Review*

In determining whether there is sufficient evidence to support a conviction, the record is reviewed as a whole "'in the light most favorable to the judgment below to

4.

determine whether it discloses substantial evidence - that is, evidence which is reasonable, credible and of solid value - such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Towler* (1982) 31 Cal.3d 105, 117-118, quoting *People v. Johnson* (1980) 26 Cal.3d 557, 578.) The standard of review is the same in cases where the jury relies on circumstantial evidence. (*Towler, supra,* at p. 118.) Where a jury rejects a defendant's hypothesis pointing to innocence, and the evidence supports "'the implied finding of guilt as the more reasonable of the two hypotheses,'" we must affirm the conviction. (*Ibid.*) We analyze this issue based on Hernandez's version of the facts as substantially the version accepted by the jury. (See *People v. Medina* (1995) 39 Cal.App.4th 643, 651 (*Medina*).)

*Applicable Law and Analysis*

Appellant contends that there is insufficient evidence to support his conviction of carjacking. Carjacking is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear. (§ 215, subd. (a).) A conviction of carjacking requires proof that (1) the defendant took a vehicle that was not his or hers (2) from the immediate presence of a person who possessed the vehicle or was a passenger in the vehicle (3) against that person's will (4) by force or fear and (5) with the intent to permanently or temporarily deprive the person of possession of the vehicle. (*People v. Magallanes* (2009) 173 Cal.App.4th 529, 534.) We find that there is sufficient evidence to support appellant's conviction of carjacking.

A person takes something when he gains possession of it and moves it. (*People v. Vargas* (2002) 96 Cal.App.4th 456, 463.) Courts have stated that the taking element in carjacking is analogous to a taking in a robbery. (*Ibid.*) Slight movement, even a very short distance, will suffice, and it is not necessary that the property be taken out of the

5.

physical presence of the victim. (2 Witkin & Epstein, Cal. Crim. Law (4th ed. 2012) Crimes Against Property, § 96, p. 133.) In the present case, Hernandez testified that he handed his car keys to appellant. He watched appellant leave the yard through the gate and into the alley where the car was parked, assumed he got in (since he saw him close the door), heard it start, and saw the car pull away. The fact that Hernandez may not have definitively seen appellant drive away does not mean that a jury could not reasonably conclude that it was indeed appellant who moved the car based on available evidence. When Hernandez regained possession of his keys, he found his car parked on the street in front of the house. Appellant's argument makes much of the fact that the car was only moved from the alley to the street. However, even if moved only a few yards there is sufficient evidence that appellant had possession of the car and moved it.

Carjacking requires the vehicle to be taken from the victim's immediate presence. Courts do not require the victim to be in the actual physical presence of the car when the confrontation occurs. (See *Medina, supra,* 39 Cal.App.4th at p. 649.) Rather, "immediate presence" is defined to encompass an area in proximity to the vehicle. (*Id.* at p. 651.) In *Medina,* the defendant lured the victim to a hotel room where he robbed the victim and took the keys to his car, which was parked outside approximately 20 feet away. (*Id.* at pp. 646-647.) The court concluded that there was substantial evidence the immediate presence requirement was satisfied. (*Id.* at p. 651; see also *People v. Gomez* (2011) 192 Cal.App.4th 609, 625 (*Gomez*) [immediate possession element met when defendant took the truck while the victim fearfully watched from inside his apartment, about 10 feet away]; *People v. Hoard* (2002) 103 Cal.App.4th 599, 608 [immediate possession element met when defendant took keys by threat even though the victim was not in the parking lot when the defendant drove away].) Thus, it is not necessary for the victim to be physically present in or with the vehicle when the taking occurs.

Similar to the circumstances in *Medina*, Hernandez's car was parked only a few feet away on the other side of the fence that surrounded the backyard where the

confrontation occurred. Hernandez was in possession of his keys at the time and fearfully gave them to appellant, believing his life was in danger if he did not comply. Perez found appellant still in possession of the keys and the car when he went to retrieve them on behalf of Hernandez. The jury could have reasonably found sufficient evidence that the car was taken from Hernandez's immediate presence.

Similarly, there is sufficient evidence that the car was taken against Hernandez's will. Hernandez testified that he did not want to hand over his keys but felt he had to because he believed appellant and Porras would harm him if he did not do as they asked. Even if following appellant's version of the facts, where he pulled Hernandez from the car and there was a brief confrontation before Hernandez ran off, there is no evidence that Hernandez willingly gave up his keys or his car.

The taking must also occur by fear or force. While threats or demands for car keys may demonstrate a taking by fear or force, an express threat is not necessary to establish the victim's fear. (*People v. Hoard, supra,* 103 Cal.App.4th at p. 609; *People v. Magallanes*, *supra*, 173 Cal.App.4th at p. 534.) A defendant's brazen behavior can suffice to create a reasonable sense of fear in the victim. (*Magallanes*, *supra*, at p. 534, citing *People v. Flynn* (2000) 77 Cal.App.4th 766, 771-773.) Again, the facts in *Medina* are similar to what transpired in the case here. In *Medina*, the defendant used sticks at the hotel room to intimidate the victim into handing over his keys and wallet. The victim was handcuffed and beaten, and the defendant left in the victim's car. (*Medina, supra,* 39 Cal.App.4th at pp. 646-647.) The court found that there was sufficient evidence that this was a forceful taking for carjacking. (*Id*. at p. 651.)

Here, appellant pulled Hernandez out of the Cadillac. During the confrontation that followed, appellant was holding a stick and beating the ground with it as he made demands for Hernandez to give him money and the keys to his car. Hernandez was thrown against the Cadillac and punched in the face while these demands were made. Porras was also present holding a saw. Additionally, appellant forced Hernandez to sign

7.

a note indicating that he sold the car to Benitez.  Hernandez testified that appellant threatened to kill him if he did not comply.  Hernandez felt that his life was in danger and that he had to comply or risk harm.  In light of these demands and threats, he gave appellant the keys.  There was sufficient evidence for the jury to conclude that fear and force were used.

Finally, a defendant must have the intent to permanently or temporarily deprive the person of possession of the vehicle.  The intent must exist before or during the use of force or fear.  (*Gomez, supra,* 192 Cal.App.4th at p. 618.)  If the defendant did not form this intent until after using force or fear, carjacking has not occurred.  (CALCRIM No. 1650.)  In *Gomez*, the defendant was part of a group that beat up the victim in an apartment parking lot.  (*Gomez, supra,* at pp. 614, 617-618.)  After the fight was over, they returned for the victim's truck upon discovering that they had his keys.  (*Ibid.*)  The victim could see them approach from his apartment, two of them tried to enter the apartment, and he reasonably feared they would assault him again.  (*Id.* at p. 615.)  The court found sufficient evidence that the intent to permanently or temporarily deprive existed during the use of fear.  (*Id.* at p. 625.)

As in *Gomez*, there is sufficient evidence that appellant intended to permanently or temporarily deprive Hernandez of his car during the use of force or fear.  Hernandez testified that appellant demanded his keys after pulling him from the car.  Appellant was holding a stick and Porras stood close by with a saw telling Hernandez to cooperate.  There was also testimony from Hernandez that appellant ordered him to call the registered owner and made him sign a letter indicating that the car had been transferred, either by gift or sale, to Benitez.  Thus, there was substantial evidence for a reasonable trier of fact to conclude that appellant intended to permanently deprive Hernandez of possession of his car.

*Conclusion*

Appellant emphasizes the inconsistency and lack of credibility in Hernandez's statements at trial. However, on appeal, our task is to determine whether the evidence could reasonably support a finding of guilt, not whether the evidence at trial was believable. Substantial evidence reasonably supports the jury's conclusion that appellant took Hernandez's vehicle against his will by force and with the intent to permanently deprive him of it. His claim to the contrary is rejected.

## II. LESSER INCLUDED OFFENSE

Appellant also contends that the trial court erred in failing to instruct the jury sua sponte on the offense of unlawful taking of a vehicle under Vehicle Code section 10851, subdivision (a). We do not agree.

*Procedural Background*

At trial, the jury was instructed pursuant to CALCRIM No. 1650 on carjacking and CALCRIM No. 1600 on robbery.[3] There was no request that for the jury to be instructed on unlawfully taking a vehicle under Vehicle Code section 10851, subdivision

---

[3] The jury was instructed on carjacking pursuant to CALCRIM No. 1650, as follows: To prove that the defendant is guilty of this crime, the People must prove that: (1) The defendant took a motor vehicle that was not his own; (2) The vehicle was taken from the immediate presence of a person who possessed the vehicle or was its passenger; (3) The vehicle was taken against that person's will; (4) The defendant used force or fear to take the vehicle or to prevent that person from resisting; and (5) When the defendant used force or fear to take the vehicle, he intended to deprive the other person of possession of the vehicle either temporarily or permanently. The defendant's intent to take the vehicle must have been formed before or during the time he used force or fear. If the defendant did not form this required intent until after using the force or fear, then he did not commit carjacking. A person takes something when he or she gains possession of it and moves it some distance. The distance moved may be short. A person does not have to actually hold or touch something to possess it. It is enough if the person has control over it, either personally or through another person. Fear, as used here, means fear of injury to the person himself or herself. A vehicle is within a person's immediate presence if it is sufficiently within his or her control so that he or she could keep possession of it if not prevented by force or fear.

9.

(a). Appellant argues that the trial court should have, sua sponte, provided the CALCRIM No. 1820 instruction on unlawfully taking a vehicle under Vehicle Code section 10851, subdivision (a) because it is a lesser included offense under the elements test. He further contends that even if the elements test is not met here, it is a lesser offense of the crime of carjacking under the accusatory pleadings test. Both arguments are unavailing.

*Applicable Law and Analysis*

In criminal cases, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence, even in the absence of a request. (*People v. Daya* (1994) 29 Cal.App.4th 697, 712.) The general principles of law governing the case are those that are closely and openly connected with the facts before the court and necessary for the jury's understanding of the case. (*Ibid.*) This obligation includes giving instructions on lesser included offenses when the evidence raises a question as to whether all the elements of the charged offense were present. (*Ibid.*) A defendant "'is entitled to an instruction on a lesser included offense only if [citation] "there is evidence which, if accepted by the trier of fact, would absolve [the] defendant from guilt of the greater offense" [citation] *but not the lesser*. [Citations.]'" (*People v. Lopez* (1998) 19 Cal.4th 282, 288.)

For purposes of instruction, in determining whether an offense is necessarily included in another, one of two tests must be met. The first is the elements test, which asks whether "'"'all the legal ingredients of the corpus delicti of the lesser offense are included in the elements of the greater offense.' [Citation.]"'" (*People v. Montoya* (2004) 33 Cal.4th 1031, 1034 (*Montoya*).) The second is the accusatory pleadings test, in which "a lesser offense is included within the greater charged offense '"if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed." [Citation.]'" (*People v. Lopez, supra*, 19 Cal.4th at pp. 288-289.)

10.

We first apply the elements test and compare the elements of carjacking under section 215, subdivision (a) with unlawful taking of a vehicle under Vehicle Code section 10851, subdivision (a).

The lesser offense in this case is unlawfully taking a vehicle and the greater offense is carjacking, since it has the most elements. Unlawful taking of a vehicle is committed when (1) a person drives or takes a vehicle not his own, (2) without the owner's consent, (3) with the intent to either permanently or temporarily deprive the owner of title to or possession of the vehicle, (4) with or without the intent to steal the vehicle. (Veh. Code, § 10851, subd. (a).)

The California Supreme Court in *Montoya* addressed the issue of whether the offense of unlawfully taking a vehicle is a lesser included offense to carjacking. (*Montoya, supra*, 33 Cal.4th at pp. 1034-1035.) After applying the elements test, the Court concluded that it is not because carjacking could be committed without necessarily committing an unlawful taking of a vehicle. (*Id.* at p. 1035.) It explained, "'[c]arjacking is an offense against the possessor or passengers in a vehicle,'" whereas "'[[u]nlawful taking of a vehicle] is a crime against ownership.'" (*Ibid.*) A person can commit carjacking without taking the vehicle from the owner, and thus has not committed an unlawful taking of a vehicle.

Because unlawfully taking a vehicle is not a lesser included offense to carjacking, the trial court had no sua sponte duty to instruct the jury on the lesser crime under the elements test. Even if Hernandez was the owner of the car, as appellant asserts, the elements test is still not useful because Supreme Court precedent has established that one is not a lesser included offense of the other.

The accusatory pleadings test looks at whether the charging language of the accusatory pleading describes the offense in such a way that, if committed as specified, some lesser offense is necessarily committed. (*People v. Lopez, supra*, 19 Cal.4th at pp. 288-289.) This requires consideration of the pleading for the greater offense. Here the

11.

greater offense is carjacking, which alleged in count 1: "On or about February 29, 2012, in the above named judicial district, the crime of CARJACKING, in violation of PENAL CODE SECTION 215(a), a felony, was committed by Gion Carlo Porras and Brian Anthony Carroll Jr., who did unlawfully take a motor vehicle in the possession of Raul Adolfo Hernandez from his or her person and immediate presence and from the person and immediate presence of a passenger of said motor vehicle, against the will and with the intent to permanently and temporarily deprive the person in possession of the motor vehicle of the possession and accomplished by means of force and fear."

The evidence at trial established that while Hernandez was in possession of the car when it was taken, he was not the registered owner. The charging language of the pleading identifies the victim as someone in possession of the car. It does not refer to the owner. The crime of carjacking was pleaded in a manner that did not include unlawfully taking a vehicle because the language did not allege that the crime was committed against the registered owner. As discussed above, the crime of unlawfully taking a vehicle is a crime against ownership, not possession. (*Montoya*, *supra*, 33 Cal.4th at p. 1035.) Thus, as pleaded, appellant could have committed carjacking without also committing the crime of unlawfully taking a vehicle.

Neither the elements test nor the accusatory pleadings test support appellant's argument that the trial court should have instructed the jury on a lesser offense to carjacking.

We also find any error in failing to instruct on unlawfully taking a vehicle harmless. In *People v. Breverman* (1998) 19 Cal.4th 142, 178, the California Supreme Court held that in noncapital cases, "error in failing sua sponte to instruct, or to instruct fully, on all lesser included offenses and theories thereof which are supported by the evidence must be reviewed for prejudice exclusively under *Watson*." Under *People v. Watson* (1956) 46 Cal.2d 818, 836, a conviction for a charged offense may be reversed as a consequence of this sort of error when, after examination of the entire cause, including

the evidence, it appears "'reasonably probable' the defendant would have achieved a more favorable result had the error not occurred." (*Breverman, supra,* at p. 149.)

Here, there was no error because even if the trial court had instructed on the crime of unlawfully taking a vehicle, it is not reasonably probable that the jury would have reached a more favorable outcome. There are two important distinctions between carjacking from unlawfully taking a vehicle. First is the status of the victim, whether the owner or the possessor, and the second is the means by which the vehicle was taken, whether with force or fear. Unlawfully taking a vehicle can only be committed against the owner of the vehicle. However, carjacking can be committed against either an owner or a possessor of the vehicle. Thus, Hernandez's status as a possessor and not the owner of the car would not have changed the outcome as to carjacking. Additionally, the jury in this case obviously believed the prosecution's testimony that Hernandez's vehicle was taken by force or fear. Evidence demonstrated that appellant threatened to kill Hernandez if he did not relinquish his keys and Hernandez believed he would be harmed if he did not cooperate.

Under these circumstances, there is no reasonable probability that had the jury been instructed on unlawfully taking a vehicle it would have chosen that option.

## DISPOSITION

The judgment is affirmed.

_____
Franson, J.

WE CONCUR:

_____
Cornell, Acting P.J.

_____
Poochigian, J.

13.